# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CATEGORY 5 MANAGEMENT GROUP, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 09-633-CG-B** |
| | ) | |
| **NATIONAL CASUALTY INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

## ORDER

This matter is before the court on the motions for summary judgment filed by defendants, National Casualty Insurance Company ("NCIC") (Doc. 72), Colonel McCrary Trucking, Inc. ("CMT") (Doc. 148), ACE American Insurance Company ("ACE") (Doc. 161), and plaintiff, Category 5 Management Group, LLC ("CAT 5") (Docs. 154 and 155). For the reasons set forth herein, CAT 5's motions are due to be **DENIED** and the defendants' motions are due to be **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

On June 29, 2007, the defendant, Colonel McCrary Trucking, LLC ("CMT"), entered into a subcontract ("the subcontract") with the plaintiff, Category 5 Management Group, LLC ("CAT 5"), to provide debris removal services in Jefferson Parish, Louisiana, following Hurricane Katrina. (Doc. 159, p. 1). On July 11, 2007,

a CMT driver named Joe Edward Johnson ("Johnson") borrowed a CMT-owned truck in order to attend a pre-trial court hearing in a criminal matter in Baldwin County, Alabama. (Doc. 159, p. 2). While returning to Louisiana, Johnson was involved in a serious traffic accident in which he allegedly drove through a red light on Highway 59 in Baldwin County without stopping, striking a Mini Cooper containing Tracy Lee Stewart, Celena Sprinkle, and a three year-old child. Id. All three passengers in the Mini Cooper were seriously injured, two severely so – Celena Sprinkle suffered a brain injury, and the three year-old child suffered a severe spinal injury which caused permanent, high-level quadriplegia. (Doc. 1, p. 1).

On August 7, 2007, the three injured parties filed suit against Johnson, R.D. Construction, Inc. ("RDC"), CMT, and four fictitious parties in the Circuit Court of Mobile County (the "underlying litigation"), seeking compensatory and punitive damages for their injuries. (Doc. 1, p. 2). The complaint alleged, inter alia, that Johnson was driving the truck with the permission of his employer, within the line and scope of his employment, or alternatively, that the trip benefitted the defendants. (Doc. 153-3, p. 5).

At the time of the accident, CMT was insured under a policy of general liability insurance issued by NCIC with a per accident limit of $1,000,000. (Doc. 1, p. 2). CMT was also insured under an excess liability policy issued by ACE with a policy limit of $4,000,000. (Doc. 159, p. 3). The NCIC and ACE policies were issued for delivery and accepted in Georgia. (Doc. 153, p. 6).

On December 31, 2007, the plaintiffs in the underlying litigation filed an amended complaint (the "amended complaint"), naming additional defendants, including CAT 5, and alleging that CMT was a subcontractor of CAT 5. (Doc. 153-1, p. 5). The amended complaint alleged causes of action against CAT 5 for negligence and/or wantonness, negligent and/or wanton hiring, negligent and/or wanton training, negligent and/or wanton supervision, and negligent and/or wanton entrustment. Id. at pp. 6-15. On October 2, 2008, NCIC and ACE each paid their policy limits, a total of $5,000,000.00, to settle the claims of the underlying plaintiffs against Johnson, CMT and RDC, but not CAT 5. (Doc. 159, p. 10).

In January 2009, CAT 5 filed an amended cross claim against CMT and filed third party claims against NCIC and ACE, alleging causes of action for negligence against CMT, bad faith against NCIC and ACE, and breach of contract against all three. See Doc. 1-3. In addition, CAT 5 alleges that it is a third party beneficiary of the insurance policies NCIC and ACE issued to CMT. The Mobile County Circuit Court severed CAT 5's claims from the remainder of the personal injury action on September 18, 2009. (Doc. 1, p. 3). Those severed claims were subsequently removed to this court by CMT, NCIC and ACE. (Doc. 1). In January 2010, CAT 5 and the underlying plaintiffs agreed to a consent judgment in the amount of $6,000,000.00. (Doc. 159, p. 12).

In the case before this court, CAT 5 alleges 1) that CMT has breached the Subcontract by refusing to defend and indemnify CAT 5 from the claims of the plaintiffs in the underlying litigation; 2) that NCIC and/or ACE breached

contractual obligations owed to CAT 5 as a third party beneficiary of the NCIC and ACE insurance policies; 3) that NCIC and ACE are guilty of bad faith towards CAT 5 in the handling of the underlying litigation and settlement; and 4) that CMT negligently failed to procure insurance on behalf of CAT 5.

CAT 5 seeks summary judgment as to its breach of contract claim against CMT, (Doc. 154), and seeks partial summary judgment against NCIC and ACE as to its breach of contract claim arising out of NCIC's and ACE's alleged failure to defend and indemnify CAT 5. (Doc. 155). NCIC and ACE seek summary judgment as to all of CAT 5's claims. (Docs. 72 and 161). CMT seeks summary judgment as to all of CAT 5's claims. (Doc. 148).

## LEGAL ANALYSIS

### A. MOTIONS TO STRIKE THE AFFIDAVIT OF C. WILLIAM DANIELS

As a preliminary matter, the court first turns to the defendants' motions to strike the affidavit of C. William Daniels (Docs. 171, 172), which CAT 5 submitted in support of its motions for partial summary judgment against NCIC and ACE. (See Doc. 158). Daniels was the attorney for Ceres Environmental Services, Inc. ("Ceres"), which was the plaintiff in a companion case to this one, Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 2010 WL 3522385 (S.D.Ala. September 2, 2010), which arises out of the same set of facts.

The defendants argue, inter alia, that (1) CAT 5 did not identify Daniels as an individual likely to have discoverable evidence; (2) CAT 5 never supplemented its Rule 26(a) initial disclosures to identify Daniels; (3) CAT 5 never identified

Daniels at all prior to including his affidavit with its motion for partial summary judgment against NCIC and ACE. (Doc. 155); (4) CAT 5 never disclosed Daniels as an expert witness; (5) the defendants are unable to depose or cross-examine Daniels because the March 31, 2011, discovery deadline in this case has passed; (6) Daniels' affidavit consists of opinion testimony, and therefore may not be used to support a motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c)(4); (7) Daniels' affidavit expresses an opinion concerning the Ceres litigation, but does not address the instant case and is therefore irrelevant pursuant to Fed.R.Evid. 402; and (8) Daniels' testimony impermissibly invades the province of the court by seeking to testify as to the absence of a genuine issue of material fact that claims for vicarious liability were asserted in the underlying litigation in state court. (See Docs. 171, 172).

In response, CAT 5 asserts that it does not offer Daniels' affidavit testimony as expert testimony, but rather, as factual witness testimony to support CAT 5's position that the allegations of the underlying litigation were claims of vicarious liability. (Doc. 182, p. 3). CAT 5 also argues that the Daniels affidavit is relevant and probative because CAT 5, like Ceres, filed a motion for summary judgment in the underlying litigation which "implicitly held" that the plaintiffs in the underlying litigation had based their claims on vicarious liability. Id. Finally, CAT 5 argues that the Daniels affidavit violates no order entered by the court.

Federal Rule of Procedure 26(a)(1)(A)(i) requires parties to disclose the names of individuals likely to have discoverable information that the party may use to

support its claims or defenses. Federal Rule of Procedure 26(e)(1) requires parties to supplement incomplete Rule 26(a) disclosures. A party who fails to comply with Rules 26(a) or (e) is precluded from using the undisclosed witness "to supply evidence on a motion… unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). The Eleventh Circuit has held that, when a party fails to comply with Rule 26, the district court does not abuse its discretion by striking an affidavit submitted at the summary judgment stage. See Faulk v. Volunteers of America, 2011 WL 3687861 (11th Cir. 2011); Lawver v. Hillcrest Hospice, Inc., 300 Fed. Appx. 768, 770 (11th Cir. 2008).

Here, CAT 5 did not list Daniels as a potential witness in its initial disclosure, nor did it supplement its disclosures, nor does it claim to have done so. (See Doc. 182). CAT 5 has failed to explain its omission, and accordingly, the court does not find its failure to be substantially justified or harmless. Furthermore, the record reveals that the defendants would not have known that CAT 5 was relying on Daniels' testimony until his affidavit materialized as an exhibit in support of CAT 5's motions for partial summary judgment.

Accordingly, the defendants' motions to strike the Daniels affidavit (Docs. 171, 172) are **GRANTED.**

## B.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th

Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in [the non-moving party's] pleading; rather, its response .... must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation and citation omitted).

## C. CAT 5's MOTIONS FOR SUMMARY JUDGMENT

CAT 5 filed a motion for summary judgment against CMT on its breach of contract claim for failure to indemnify and defend CAT 5. CAT 5 also filed a motion for partial summary judgment against NCIC and ACE on its breach of contract claim for failure to indemnify and defend CAT 5.

### (1) CAT 5's Motion For Summary Judgment Against CMT

### (a) Indemnity for Underlying Claims of CAT 5's Negligence

The parties agree that, per section 6.18 of the Subcontract, Louisiana law controls. (Doc. 150-1, p. 65, ¶6.18). CMT argues that summary judgment for CAT 5 is inappropriate because the allegations against CAT 5 in the underlying litigation (the allegations for which it seeks a defense and indemnification) allege negligence on the part of CAT 5, i.e., negligent hiring, negligent training, negligent supervision, and negligent entrustment. (Doc. 173, p. 5). CMT asserts that under Louisiana law, " … a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms." Perkins v. Rubicon, Inc., 563 So.2d. 258, 259 (La. 1990) (citing Sovereign Ins. Co. v. Texan Pipe Line Co., 488 So.2d 982 (La. 1986) ("When a contract of indemnity makes no express provisions for indemnification against the consequences of the indemnitee's negligence … the court will presume that the parties did not intend to hold the indemnitee harmless from such liability."); Chevron U.S.A., Inc. v. Energen Resources Corp., 2009 WL 2390311, *3 (M.D. La. 2009) ("…generalized language indemnifying against 'any

and all liability, damage, costs, fees and other losses of whatever nature…' has been held to not unequivocally express the intent to indemnify against the indemnitee's own negligence.")

In response, CAT 5 argues that it is "beyond the point and not at issue" whether the Subcontract does or does not require CMT to indemnify CAT 5 for CAT 5's own negligence. (Doc. 180, p. 1). CAT 5 argues, instead, that the Subcontract requires CMT to indemnify CAT 5 for any liability arising from the performance of the contract. (Doc. 180, p. 2). But this argument does not address CMT's point, and cites no authority to contradict the argument that explicit, unequivocal language is required in the indemnification provision when the liability to be defended against and indemnified arises from CAT 5's own negligence. CAT 5 prefers to focus on this court's ruling in Ceres, which arises out of the same underlying litigation.[1] While the court did find that the liability at issue in Ceres related to the contract between CAT 5 and Ceres, neither the court nor the parties in that case cited or addressed the Louisiana rule that indemnification of the indemnitee's negligence must be unequivocal. See Id.

The court finds the case of Daigle v. Lang, 377 So.2d 1384, 1390 (La. App. 4th Cir. 1979), to be instructive. The contract at issue was between a contractor and

---

[1] CAT 5 cites the plaintiff's motion for summary judgment in Ceres as being granted. However, Ceres' motion was denied (Case 1:09-cv-00642, Doc. 41). The court infers that CAT 5 intended to cite to the court's order, which the parties requested after submitting briefs in lieu of a bench trial. (See Case 1:09-cv-00642, Doc. 63). However, CAT 5 did not cite to even one page of the order. The court need consider only the cited materials, and will not undertake to review the Ceres order on behalf of CAT 5. See Fed.R.Civ.P. 56(c)(3).

building owner, and contained an indemnification provision with language similar to that in Section 8.1 of the CAT 5/CMT Subcontract: the <u>Daigle</u> contractor indemnified the owner from claims for personal injury or property damage "arising out of his performance of the work…" <u>Daigle</u>, 377 So.2d at 1390.[2]  After a worker was seriously injured, the owner was accused of negligence, and a dispute about the indemnification provision arose.  The trial court ruled that the language of the indemnification provision limited indemnity to the consequences of the contractor's negligent acts alone.  <u>Id.</u>  Since the contract did not state that the indemnitee was indemnified against his own negligence, the indemnification provision in the contract was not triggered.  <u>Id.</u>

Even a cursory reading of the indemnification provision contained in Section 8.1 of the CAT 5/CMT Subcontract shows that the proposed indemnification is for injuries caused by "negligent acts of the Subcontractor," and does not reveal any unequivocal language requiring the CMT to indemnify CAT 5 for its own negligence. (Doc. 150-1, p. 66).  CAT 5 has not cited any language elsewhere in the Subcontract which requires CMT to indemnify CAT 5 for CAT 5's own negligent acts, nor has it

---

[2] Compare the indemnification provision at issue in <u>Daigle</u>:

"The Contractor binds and obligates itself to hold the Owner harmless from any claims of any nature whatsoever for personal injury or damage to property arising out of his performance of the work herein undertaken … :

with the indemnification provision in Section 8.1 of the Subcontract:

"The Subcontractor shall save and hold Contractor and the Corps of Engineers harmless against all suits, claims, damages and losses for injuries to persons or property arising from or caused by errors, omissions or negligent acts of the Subcontractor, its officers, agents, servants, or employees …"

offered any contrary authority suggesting that such unequivocal language is somehow not required, after all.  Instead, CAT 5 focuses its argument exclusively on the fact that it faces potential liability, without distinguishing whether that potential liability is allegedly due to its own negligence or that of another party.  Given the clear Louisiana case law on this point, the court finds that CAT 5's motion for summary judgment as to its breach of contract claims against CMT (Doc. 154) is due to be denied.

## (2) CAT 5's Motion For Partial Summary Judgment Against NCIC and ACE As To Its Breach of Contract Claims

CAT 5 claims that it was a "definitional insured" under the NCIC and ACE policies, i.e., that it was covered by NCIC's liability policy and ACE's follow form policy.  (Doc. 159, p. 26).  Therefore, according to CAT 5, NCIC and ACE owed it a duty to defend and a duty to indemnify against the claims in the underlying litigation.  (See Doc. 159, pp. 16-27).  When NCIC and ACE failed to do so, they breached their policies, giving rise to CAT 5's claim for breach of contract.  Id.

"Federal courts sitting in diversity apply the forum state's choice-of-law rules" Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998).  In contract actions, Alabama's choice of law rule provides that the law of the state wherein the contract was executed governs the interpretation of contracts.  Pines v. Warnaco, Inc., 706 F.2d 1173, 1176 n. 3 (11th Cir. 1983).  Where the last act is "receipt and acceptance" of an insurance policy, the court must apply the law of the state where this last act occurred.  Industrial Chem. & Fiberglass v. North River Ins. Co., 908 F.2d 825, 829 n. 3 (11th Cir. 1990).  The last acts

necessary to the execution of the policies, the receipt and acceptance of the policies

by the named insured, took place in Georgia.  Therefore Georgia law governs CAT

5's breach of contract claims against NCIC and ACE.

Under Georgia law, an insurer's duty to defend and duty to indemnify are

separate and distinct obligations.  Elan Pharm. Research Corp. v. Employers Inc. of

Wasau, 144 F.3d 1372, 1375 (11th Cir. 1998).  The existence of a duty to defend does

not necessarily mean that a duty to indemnify exists.  City of Atlanta v. St. Paul

Fire & Marine Ins. Co., 231 Ga. App. 206, 208 (Ga. App. 1997).  "Whether an

insurer is obligated to defend an action against its insured 'is determined by the

contract; and since the contract obligates the insurer to defend claims asserting

liability under the policy; even if groundless, the allegations of the complaint are

looked to to determine whether a liability covered by the policy is asserted.  Thus,

the issue is not whether [the insured] is actually liable to the plaintiffs [in the

underlying action]; the issue is whether a claim has been asserted which falls

within the policy coverage and which the insurer has a duty to defend.' "  Atlanta

Postal Credit Union v. International Indemnity Co., 228 Ga. App. 887, 888 (Ga.

App. 1998) (quoting Penn-America Ins. Co. v. Disabled American Veterans, Inc., 224

Ga. App. 557, 558, 481 S.E.2d 850 (1997)) (citations omitted).

CAT 5 claims that (a) the policy language, (b) the factual allegations asserted

by the plaintiffs in the underlying litigation, and (c) the denial of CAT 5's motion for

summary judgment in the underlying litigation all demonstrate that CAT 5 was

insured under the NCIC and ACE policies and therefore was owed both a defense

and indemnity by NCIC and ACE. (Doc. 170, p. 5). Not surprisingly, NCIC and

ACE argue the opposite.

### (a)     The Policy Language

The NCIC policy provides that the following are "insureds:"

a.     You for any covered "auto."

b.     Anyone else while using with your permission a covered "auto" you own, hire or borrow ….

c.     The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected:
(1)     Is being used exclusively in your business as a "trucker"; and
(2)     Is being used pursuant to operating rights granted to you by a public authority.

d.     The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":
(1)     Is being used exclusively in your business as a "trucker"; and
(2)     Is being used pursuant to operating rights granted to you by a public authority.

e.     Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Doc. 156-2, p. 20). Furthermore, the ACE policy, as a "follow form" policy provides

that:

The Definitions, Terms, Conditions, Limitations, and Exclusions of the UNDERLYING

14

INSURANCE [i.e., the NCIC policy], in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy…

(Doc. 161-6, p. 15). CAT 5 claims that it meets the criteria of subcategory (e) in the NCIC policy ("Subcategory (e)"), because Johnson was found to be insured under NCIC's and ACE's policies. (Doc. 159, p. 18). Since CAT 5 faces potential liability for Johnson's conduct, it argues, it therefore falls within the policy and is entitled to both a defense and indemnification from claims in the underlying litigation. Id.

NCIC and ACE, on the other hand, argue that, under Georgia law, the phrase "liable for the conduct of an 'insured'…" in a liability insurance policy is synonymous with vicarious liability, and that they are only obligated to defend and indemnify CAT 5 for claims of vicarious liability. (Doc. 176, p. 15) (citing Atlanta Postal Credit Union v. International Indemnity Co., 228 Ga. App. 887, 891 (Ga. App. Ct. 1998) ("[w]e examined the same policy provision and ruled that because the complaint alleged liability under the doctrine of respondeat superior, the defendant was an insured under the policy."); Aetna Casualty & Surety Co. v. Empire Fire & Marine Ins. Co., 212 Ga. App. 642, 643-44 (Ga. App. Ct. 1994) ("Since the complaints allege that Carolina Mills is liable for Pelfry's negligence on the basis of respondeat superior, Carolina Mills fits within the policy's definition of an 'insured.'"); Zurich Insurance Co. v. New Amsterdam Cas. Co., 117 Ga. App. 426, 429 (Ga. App. 1968) (".. the latter phrase is sufficiently broad to include an employer who is responsible for the negligent use by the employee in a respondeat superior situation."). NCIC and ACE argue further that the claims against CAT 5 in the

Amended Complaint are not for vicarious liability, but are actually claims of direct liability, i.e., negligence, negligent hiring, negligent training, negligent supervision, and negligent entrustment. (Doc. 176, p. 16). Therefore, since CAT 5 it being sued for its own alleged negligence, rather than the negligence of Johnson, then CAT 5 is not covered under their policy, and NCIC and ACE owe no duties of defense or indemnification. (Doc. 176, p. 16).

Although CAT 5 flatly asserts that the phrase "anyone liable for the conduct of an 'insured'…" means more than vicarious liability, it cites no authority to support that argument. (Doc. 170, p. 4). CAT 5 also suggests that there is no extrinsic evidence of an intention by CMT, NCIC, or ACE to limit the policy only to allegations of vicarious liability, (Doc. 159, p. 22), and argues further that any ambiguity existing in the policy language is due to be resolved in CAT 5's favor. Id. (citing McIntosh v. Scottsdale Ins. Co., 992 F.2d 251 (10th Cir. 1993)). However, the sole case that CAT 5 cites for support on this point is from the Tenth Circuit and applies Kansas law, telling the court nothing about Georgia law.

Under Georgia law, "[t]he construction of a contract, including the existence or nonexistence of any ambiguities in the contract, presents a question of law for the court." McKinley v. Coliseum Health Group, LLC, 308 Ga. App, 768, 770 (Ga. App. 2011) (citations omitted). After review of the policy language, the court does not find any ambiguity that is due to be resolved in CAT 5's favor. In light of NCIC and ACE's citation of Georgia law explaining the applicability of Subsection (e) to vicarious claims only, and CAT 5's conclusory counterargument citing no binding

authority, the court finds that the policy language on its face does not support CAT 5's summary judgment motion, and therefore turns its attention to the claims against CAT 5 in the underlying litigation to determine whether they constitute claims of vicarious liability against CAT 5.

### (b)    The Factual Allegations in the Underlying Litigation

Alternatively, CAT 5 maintains that the plaintiffs in the underlying litigation have asserted claims against CAT 5 which are grounded in vicarious liability,  (Doc. 159, p. 23), because the accident that Johnson caused was the impetus for the underlying litigation, and therefore the claims against all defendants in the underlying litigation necessarily "arose from" Johnson's conduct.  (Doc. 159, p. 18). CAT 5 suggests that NCIC has admitted to this point in the deposition testimony of its Rule 30(b)(6) representative. (Doc. 156-6, pp. 121-122).  Furthermore, as evidence of claims of vicarious liability, CAT 5 also points out that the First Amended Complaint alleges that Johnson was acting within the scope of his employment, was conferring an economic benefit on all defendants in the underlying litigation, and that CAT 5 negligently hired and trained Johnson.  (Doc. 159, p. 23).  Because Alabama is a notice pleading state, CAT 5 argues that the underlying plaintiffs have stated claims for vicarious liability.  Id.

Questions regarding the underlying litigation are governed by Alabama law. Lifestar Response of Alabama, Inc. v. Admiral Ins. Co., 17 So.3d 200, 213 (Ala. 2009).  CAT 5 is correct in pointing out that Alabama is a notice pleading state. Surrency v. Harbison, 489 So.2d 1097, 1104 (Ala. 1986) (quoting Simpson v. Jones,

460 So.2d 1282 (Ala. 1984)).  However, alleging, as the underlying plaintiffs did, that Johnson was acting within the scope of his employment is sufficient to put CMT, not CAT 5, on notice that it was facing or may have faced claims of vicarious liability.  There is no allegation in the underlying complaint that Johnson was CAT 5's employee.

The court is also not convinced by NCIC's deposition testimony purportedly admitting that the allegations made against CAT 5 implicate vicarious liability. Terry Showers, NCIC's 30(b)(6) representative, agreed with plaintiff's counsel's characterization that "the allegations made against CAT 5 arose out of the acts or omissions of Mr. Johnson[.]"  (Doc. 156-6, p. 121).  Any claim for negligent hiring, training, supervision, or entrustment will necessarily "arise out of the act or omission" of an independent agent or employee, even when vicarious liability is not implicated.  See Humana Medical Corp. of Alabama v. Traffanstedt, 597 So.2d 667, 668-69 (Ala. 1992).

CAT 5 cannot sustain a grant of summary judgment upon this argument alone.  Accordingly, the court looks to the Mobile County Circuit Court's denial of summary judgment in the underlying litigation.

### (c) CAT 5's Motion for Summary Judgment in State Court

Finally, CAT 5 asserts that, because its motion for summary judgment in the underlying litigation was denied, the Mobile County Circuit Court must therefore have tacitly held that the plaintiffs in the underlying litigation asserted claims for vicarious liability against CAT 5.  (Doc. 159, pp. 23-24).  If that court implicitly

found that vicarious liability was alleged, then under CAT 5's argument, it would fall within the NCIC policy's definition of an insured, and therefore CAT 5 would be owed a defense and indemnity in the underlying litigation.

NCIC and ACE argue that CAT 5 moved for summary judgment on grounds relating to direct liability claims and not vicarious liability claims, i.e., CAT 5 claimed in its motion that its actions were not the proximate cause of the plaintiffs' injuries; it had no relationship to Johnson; and it owed no duty to the plaintiffs. (Doc. 176, pp. 17-18) (citing Doc. 157-5). Furthermore, NCIC and ACE point out that Judge Johnston's order on CAT 5's motion for summary judgment simply said, "denied," with no elaboration. (Doc. 157-7, p. 1). Therefore, they argue, the Judge's order does not make any finding or implication that CAT 5 was vicariously liable for Johnson. (Doc. 176, p. 18).

Of the summary judgment briefs presented to the state court in the underlying litigation, the court notes that only CAT 5's memorandum in support of summary judgment makes any mention of vicarious liability, and even then, it devotes only one paragraph to the subject. (Doc. 157-5, pp. 5-6). This short paragraph consists of an extended string-citation to Alabama law on vicarious and respondeat superior liability, without citing to any facts or record evidence. The rest of CAT 5's state court memorandum in support – the majority of its argument -- is devoted to addressing the claims of direct liability made against it. (See Doc. 157-5). Additionally, the underlying plaintiffs' opposition to CAT 5's motion for summary judgment, (Doc. 157-6), mentions only claims of direct liability against

CAT 5, including CAT 5's alleged breach of its duty to supervise and direct work; CAT 5's alleged breach of its duty to use qualified labor; and CAT 5's alleged breach of contractual duties with respect to Johnson's hiring and supervision.  Id. at pp. 8-11.  The underlying plaintiffs do not make mention of vicarious liability in their brief at all.  Id. at p. 1.  It is therefore not at all apparent to this court, based on the state court summary judgment briefs and Judge Johnston's concise order, that "the only conclusion" from the state court's denial of summary judgment in the underlying litigation is that CAT 5 was facing vicarious liability claims.

Upon review of CAT 5's argument that it was insured under the NCIC and ACE policies, and based upon the record evidence and legal authority cited by CAT 5 in support of its argument, the court finds that CAT 5 has not met its summary judgment burden of establishing the absence of a genuine dispute of material fact. It logically follows that, if CAT 5 has not carried its summary judgment burden with regard to its status as an insured party, then it has not carried its summary judgment burden regarding its claim that NCIC and ACE owed it a duty of defense and indemnity, and its claim that NCIC and ACE engaged in bad faith when they settled for the policy limits.  Therefore, CAT 5's motion for summary judgment on its breach of contract claim is due to be denied.

## C. NCIC's AND ACE'S MOTIONS FOR SUMMARY JUDGMENT

NCIC and ACE seek summary judgment on all of CAT 5's claims[3]: (1) breach of contract on the alleged duties to defend and indemnify; (2) bad faith on the alleged duties to defend and indemnify; (3) third party beneficiary; and (4) negligence for failure to procure insurance for CAT 5.

### (1)  CAT 5's Breach of Contract Claims

The parties' arguments regarding NCIC's and ACE's motions for summary judgment on CAT 5's breach of contract claim hew closely to the arguments advanced for and against CAT 5's motion for partial summary judgment, supra, with respect to the breach of contract claims.  However, the burden is now on NCIC and ACE, as the moving parties, to establish the absence of a genuine dispute of material fact.  In the interests of judicial economy, the court only briefly summarizes the parties' positions where they are duplicative of the arguments made above.

NCIC and ACE argue that CAT 5 is not covered by their respective policies because the phrase in Subsection 1(e), "liable for the conduct of an 'insured'…", refers exclusively to vicarious liability under Georgia law.  (Doc. 153, pp. 14-15).  Under this argument, NCIC and ACE are only obligated to defend and indemnify CAT 5 for claims of vicarious liability.  (Doc. 176, p. 15) (citing Atlanta Postal Credit Union, 228 Ga. App. at 891, supra).  NCIC and ACE argue that, since claims

---

[3] ACE submitted its own substituted motion for summary judgment (Doc. 161) and adopted and incorporated NCIC's substituted motion for summary judgment and memorandum in support (Docs. 153 and 154).

against CAT 5 in the underlying litigation are actually claims of direct liability (i.e.,

negligence, negligent hiring, negligent training, negligent supervision, and

negligent entrustment), then CAT 5 is not covered under their policy and is owed no

duty of defense or indemnity. (Doc. 176, p. 16).

CAT 5 flatly disputes this argument, and asserts that the phrase in

Subsection 1(e) is broader than NCIC and ACE contend. (Doc. 170, p. 4). However,

CAT 5 offers no contrary Georgia authority to rebut the assertion that "anyone

liable for the conduct of an insured…" refers exclusively to vicarious liability. CAT

5 focuses instead on the absence of extrinsic evidence that CMT, NCIC, or ACE

intended to limit Subsection 1(e) to allegations of vicarious liability only. Id. at pp.

3-4. Yet extrinsic evidence is required only when there is an ambiguity to be

resolved, McKinley v. Coliseum Health Group, LLC, 308 Ga. App. 768, 770 (Ga.

App. 2011) (citing Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Ga., 301

Ga. App. 367, 368(3) (2009)), and CAT 5 does not assert that the language is

ambiguous. (Doc. 170, p. 4). Furthermore, the construction of a contract, including

the existence or nonexistence of any ambiguities in the contract, presents a question

of law for the court, which finds no ambiguity here. Id.

CAT 5 also argues that "a fair reading" of the original and First Amended

Complaints makes clear that the liability of all defendants arose out of the conduct

of Johnson, i.e., that they allege vicarious liability. (Doc. 170, p. 4). Again, CAT 5

cites no authority or evidence to explain how the five counts alleged against CAT 5

are anything other than torts implicating CAT 5's own negligence (i.e., negligence,

negligent hiring, negligent supervision, negligent training, and negligent entrustment). Instead, CAT 5 simply insists that the claims against it in the underlying litigation "arose out of" Johnson's conduct. Id. As the court discussed in greater detail, supra, there was no allegation in the underlying litigation that Johnson was CAT 5's employee. Furthermore, negligence-based claims will necessarily "arise out" of an employee's or independent agent's act, even when vicarious liability is not implicated. See Humana Medical Corp. of Alabama v. Traffanstedt, 597 So.2d 667, 668-69 (Ala. 1992). Thus, for the same reasons discussed, supra, the court does not attach great weight to NCIC's deposition testimony admitting that the allegations against CAT 5 "arose out of" Johnson's conduct. (Doc. 170, p. 4).

Finally, CAT 5 points to its pleadings in the underlying litigation as evidence that it was defending itself against claims of vicarious liability. This argument fails for the same reasons as discussed above: only CAT 5's state court memorandum in support of summary judgment makes any mention of vicarious liability, and even then devotes only one short paragraph to the subject without citing to any facts or record evidence. (Doc. 157-5, pp. 5-6). Instead, the majority of CAT 5's argument is devoted to addressing the claims of direct liability made against it. (See Doc. 157-5). Moreover, the underlying plaintiffs' opposition mentions only claims of direct liability against CAT 5, with no mention or allegations of vicarious liability at all. See Doc. 157-6. As stated above, it is not at all apparent to the court, based on the state court summary judgment briefs and Judge Johnston's concise order, that "the

only conclusion," or that any reasonable conclusion to be drawn from the state court's denial of summary judgment in the underlying litigation is that CAT 5 was facing vicarious liability claims.

The court finds that NCIC and ACE have met their burden of showing that there is no genuine dispute that the language of the Subsection 1(e) of the NCIC policy, interpreted according to Georgia law, is clear and unambiguous that only claims of vicarious liability are covered. Furthermore, the court finds that NCIC and ACE have established that no genuine dispute exists as to the nature of the factual allegations contained in the First Amended Complaint. The claims against CAT 5 are clearly direct liability claims for CAT 5's own alleged negligence, and do not consist of claims for vicarious liability. Therefore, NCIC and ACE's motions for summary judgment are due to be granted with respect to CAT 5's claims of breach of contract for failure to defend and indemnify.

### (2) CAT 5's Third Party Beneficiary Claim

CAT 5's Amended Cross Claim ("Cross Claim") includes a claim for third-party beneficiary status under the NCIC and ACE policies, (Doc. 1-3, pp. 8-9), and alleges that CAT 5 was entitled to a defense and indemnity under the NCIC policy, because of the indemnification provision contained in the subcontract between CMT and CAT 5. (Doc. 1-3, p. 4). While NCIC and ACE argue in their summary judgment briefs (Docs. 153 and 161) that CAT 5's third-party beneficiary arguments are not supported by Georgia law, and the CMT/CAT 5 subcontract is not an

"insured" contract due to the indemnity provision, CAT 5's opposition brief is silent on these matters. (See Doc. 170).

Accordingly, the court deems CAT 5's silence an abandonment of its third-party beneficiary claim and of its allegation regarding defense and indemnity arising out of common law indemnity principles, as to NCIC and ACE.  See Crayton v. Valued Services of Alabama, LLC, 737 F.Supp.2d 1320, 1330-1331 (M.D. Ala. 2010)  (citing Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001); Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1325 (11th Cir. 2000);  Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 F.3d 888, 892 (Fed. Cir. 1999) (affirming "the unremarkable position that assertions made in the pleadings (e.g., complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment.")).

### (3)     CAT 5's Bad Faith Claim

The parties agree that CAT 5's bad-faith claim is governed by Alabama law. (Doc. 153, p. 21), (Doc. 170, p. 6).  "The plaintiff asserting a bad-faith claim bears a heavy burden."  Shelter Mut. Ins. Co. v. Barton, 822 So.2d 1149, 1154 (Ala. 2001) (citing LeFevre v. Westberry, 590 So.2d 154, 159 (Ala. 1991).  To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must demonstrate that the insurer had no legal or factual defense to the claim.  LeFevre, 590 So.2d, supra.  The Alabama Supreme Court has distinguished between "normal" bad-faith claims and "abnormal" bad-faith claims.  Shelter Mut. Ins. Co.,

822 So.2d at 1154. (citing Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1225 (Ala. 1983). For a "normal" bad-faith claim to be submitted to a jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a pre-verdict judgment as a matter of law. Id. (citing National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982).

In the instant case, the court has found that summary judgment in favor of NCIC and ACE is appropriate on the breach of contract claim, because they have established the absence of a genuine dispute regarding the lack of their contractual liability to CAT 5 for defense and indemnification. (See supra). Thus, CAT 5 clearly does not meet the requirement that its underlying contractual claim be strong enough to obtain a pre-verdict judgment as a matter of law. Even if NCIC and ACE had not prevailed on their motion for summary judgment, they still put forward a legal and factual defense that their insurance policies, interpreted according to Georgia law, did not cover the claims brought against CAT 5 in the underlying litigation. (See supra). Thus, CAT 5 cannot meet the requirement that it demonstrate that "the insurer had no legal or factual defense to the claim." Lefevre, 590 So.2d at 159. Accordingly, NCIC's and ACE's motions for summary judgment are due to be granted with regard to CAT 5's bad-faith claim.

### (4)     CAT 5's Negligence Claim

NCIC's and ACE's motions for summary judgment are due to be granted with regard to CAT 5's negligence claim. (Doc. 1-3, p. 10). CAT 5's complaint does not allege that either NCIC or ACE owed it a duty to procure insurance, nor does it

allege that either NCIC or ACE breached any such duty.  Id.  CAT 5's failure to state a claim upon which relief can be granted is sufficient for the court to grant NCIC's and ACE's motions for summary judgment on this point.

Furthermore, while both NCIC and ACE argue this point in their motions for summary judgment, (Doc. 153, p. 29), (Doc. 161, p. 7), CAT 5's opposition brief is silent.  (See Doc. 170).  Accordingly, the court deems CAT 5's assertions of negligence against NCIC and ACE to be abandoned.  See Crayton v. Valued Services of Alabama, LLC, 737 F.Supp.2d 1320, 1330-1331 (M.D. Ala. 2010)  (citing Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001);  Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1325 (11th Cir. 2000);  Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 F.3d 888, 892 (Fed. Cir. 1999) (affirming "the unremarkable position that assertions made in the pleadings (e.g., complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment.")).

### D. CMT's MOTION FOR SUMMARY JUDGMENT

CMT has moved for summary judgment as to all of CAT 5's claims against CMT, consisting of breach of contract for failure to defend and indemnify CAT 5 in the underlying litigation and negligent failure to procure insurance on behalf of CAT 5.  (Doc. 148).

## (1) Breach of Contract for Failure to Defend and Indemnify

The Subcontract is governed by Louisiana law. (See Doc. 150-1, p. 65, ¶6.18). CMT correctly notes that the duty to defend and the duty to indemnify are two separate duties. (Doc. 149, p. 11) (citing Federal Insurance Co., et.al. v. St. Paul Fire and Marine Insurance Co., et.al., 638 So.2d 1132, 1137 (La. App. 1 Cir. 1994).

With regard to the alleged duty to defend, CMT argues that there is no agreement between the parties for CMT to defend CAT 5 "in any way," and points out that the indemnity provision contained in the Subcontract does not contain the words "defend" or "attorney fees." Id. at p. 12.

With regard to the alleged duty to indemnify, CMT argues that Louisiana law requires unequivocal language in order for an indemnitee to be indemnified against his own negligence. Id. (citing Perkins v. Rubicon, Inc., 563 So.2d 258, 259 (La. 1990)) ("[a] contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms."); (Jackson v. America's Favorite Chicken Co., 778 So.2d 1257, 1261 (La. App. 4th Cir. 2001) (holding that unless a mutual intent to provide indemnification against the indemnitee's own negligence is expressed in unequivocal terms, the presumption is that the parties did not intend for the indemnitee to be protected from his own negligence.). CMT argues further that the terms of the indemnification provision do not "unequivocally" impose upon CMT the duty to

indemnify CAT 5 for CAT 5's own negligence. (Doc. 149, p. 23). Therefore, since the claims against CAT 5 in the underlying litigation are claims of direct negligence, CMT argues that it cannot be forced to indemnify CAT 5 for these claims.

CAT 5 argues in opposition that, with regard to the alleged duty to defend, the Subcontract's indemnification clause is broad enough under Louisiana law to include indemnity for CAT 5's defense costs and expenses. (Doc. 169, p. 4). CAT 5 quotes Naquin v. Louisiana Power & Light Co., 951 So.2d 228 (La. App. 1st Cir. 2006) for the proposition that "[i]ndemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed." Id. at 231.

With regard to the alleged duty to indemnify, CAT 5 insists that the issue turns on CAT 5's potential liability to the plaintiffs in the underlying litigation. (Doc. 169, p. 2). CAT 5 also argues that the Ceres litigation is instructive in the instant case because Ceres ultimately prevailed on its claims for defense and indemnity based upon its subcontract with CMT. Id.

As was the case with CAT 5's motion for summary judgment against CMT, and as the court stated, supra, even a cursory reading of Section 8.1 of the Subcontract in this case shows that the indemnification provision covers injuries caused by "negligent acts of the Subcontractor." (Doc. 150-1, p. 66). CAT 5 has cited no "unequivocal" language in the Subcontract which requires CMT to indemnify CAT 5 for CAT 5's own negligent acts, nor has it offered any contrary Louisiana authority suggesting that such unequivocal language is somehow not

required, after all.  Instead, CAT 5 prefers to draw comparisons between the instant case and the <u>Ceres</u> litigation, despite the fact that the indemnification provisions at issue in <u>Ceres</u> contained far broader language.  (<u>See</u> Doc. 153-2, p. 7).  There is no discussion in <u>Ceres</u>, from either party, of the Louisiana rule requiring a clearly expressed intent to indemnify a principal against his own negligence.  <u>See</u> <u>Id.</u>  CAT 5 is silent on this point in its opposition to summary judgment.  (<u>See</u>. Doc. 169).

Given the weight of Louisiana case law requiring "unequivocal" language expressing an intent to indemnify an indemnitee for its own negligence, and further given the absence of such language in the CAT 5/CMT Subcontract, the court finds that CMT's motion for summary judgment with regard to CAT 5's breach of contract claim is due to be granted.

### (2) Negligent Failure to Procure Insurance

CMT argues that it was under no obligation to procure insurance for CAT 5 as a named insured, and asserts that it properly obtained liability insurance at levels required by the Subcontract.  (Doc. 149, pp. 12-13).

CAT 5's opposition brief is silent on this issue.  (<u>See</u> Doc. 169).  Accordingly, the court deems CAT 5's assertions of negligence against CMT to be abandoned. <u>See</u> <u>Crayton v. Valued Services of Alabama, LLC</u>, 737 F.Supp.2d 1320, 1330-1331 (M.D. Ala. 2010)  (citing <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1322 (11th Cir. 2001);  <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1325 (11th Cir. 2000);  <u>Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.</u>, 182 F.3d 888, 892 (Fed. Cir. 1999) (affirming "the unremarkable position that

assertions made in the pleadings (e.g., complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment.")).

## CONCLUSION

After due consideration of all matters presented and for the reasons set forth herein, it is **ORDERED** that CAT 5's motion for summary judgment as to its breach of contract claims against CMT (Doc. 154) is **DENIED.** CAT 5's motion for summary judgment as to its breach of contract claims against NCIC and ACE are **DENIED.** NCIC and ACE's motions for summary judgment as to all of CAT 5's claims are **GRANTED.** CMT's motion for summary judgment as to all of CAT 5's claims is **GRANTED**. The NCIC's and ACE's motions to strike certain expert testimony, (Docs. 168 and 174), and ACE's motion to strike plaintiff's reply brief, (Doc. 185), are denied as **MOOT**.

**DONE and ORDERED** this 5th day of October 2011.


       /s Callie V.S. Granade
UNITED STATES DISTRICT JUDGE